(October 9, 1986)

■ In the Matter of HARRISON SERVICES, INC., Petitioner, v STATE TAX COMMISSION, Respondent.—Kane, J.

Petitioner instituted this CPLR article 78 proceeding to review a determination of respondent which held petitioner liable for State and New York City sales and use tax for, *inter alia,* the services performed by petitioner's art directors and retouchers. The facts in this case are undisputed.

Petitioner is engaged in the business of producing catalogs for department stores in the United States and Canada. As part of the production process, petitioner engages as an independent contractor an art director who is in charge of the over-all production process. The art director would meet with petitioner's clients to plan out the catalog and ascertain what theme, content and design the client wanted for the catalog. Thereafter, the art director would actually design the catalog and would select and supervise the photographers and artists who were hired by petitioner as independent contractors to

either photograph or draw the merchandise to be displayed in the catalog. On occasion, some drawing was done by the art director. The completed artwork and photographs were then given to the client for review and approval. Thereafter, the selected photographs and artwork were subject to retouching by a skilled artist, known as a retoucher, to improve or correct the photographed image. The art director's job then was to take the various component parts, that is, the photographs, artwork and typography, and assemble them together to form the individual pages of the catalog as he felt they should look. In addition, some art directors prepared mechanicals or layouts. When the art director completed the assembly, it was sent to a color-separation house where the photographs were converted into separate films for each of the primary colors plus black. These films, along with the original photographs and artwork, were then sent to the printer, where the catalog was printed and assembled in final form. The completed catalogs and the original photographs, artwork and type mechanicals used were then sent to the client. The client used the photographs, artwork and type mechanicals for promotional and employee training purposes.

As the result of an audit conducted by the Audit Division of the Department of Taxation and Finance, petitioner was issued a notice of determination and demand for sales and use taxes for the period August 23, 1965 to November 30, 1970. Petitioner disputed the determination and a hearing was held. Thereafter, respondent ruled, *inter alia,* that the services of the art directors and retouchers hired by petitioner constituted "producing, fabricating or processing tangible personal property not purchased by [petitioner] for resale" and, therefore, subject to tax pursuant to Tax Law § 1105 (c) (2).* This CPLR article 78 proceeding ensued and was transferred to this court.

Petitioner contends that respondent's determination that the services of the art directors and retouchers hired by petitioner are taxable under Tax Law § 1105 (c) (2) is erroneous. Petitioner maintains that the services performed by the art directors and retouchers are upon tangible personal property held by petitioner *for resale* or, alternatively, that the art directors' services are not performed on property furnished by petitioner, and accordingly, not subject to sales tax under Tax Law § 1105 (c) (2) *(see also,* Tax Law § 1101 [b] [4] [i] [A]).

---

* Petitioner asserts in its brief that the other issues raised at the administrative level have been resolved through industry-wide negotiations with respondent.

Tax Law § 1105 (c) (2) imposes a tax upon the sale of the services of: "Producing, fabricating, processing, printing or imprinting tangible personal property, performed for a person who directly or indirectly furnishes the tangible personal property, not purchased by him for resale, upon which services are performed."

We turn first to a consideration of the contention that the services in question were upon personal property held for resale. In this regard, we find that the record adequately supports respondent's determination (see, Matter of Laux Adv. v Tully, 67 AD2d 1066). The primary purpose of employing the services of the art directors and retouchers was to design and assemble a catalog in final form, to take various photographs, artwork and typography and make them into a publishable catalog for petitioner's customers. The fact that the original photographs, artwork and type mechanicals upon which the art directors and retouchers performed services were eventually turned over to petitioner's customers is of no moment. The primary utility of those items was exhausted at the point that they were used in final, publishable form in the catalog (see, Matter of Cut-Outs, Inc. v State Tax Commn., 85 AD2d 838). The photographs, artwork and typography were not designed primarily for resale to petitioner's customers. They were designed for use in a catalog that petitioner had undertaken to produce for its customers by engaging the services of art directors and retouchers to supervise the production of these various component parts and design and assemble those parts into a catalog for mass production. Any resale of the component parts upon which the art directors and retouchers performed services in the production of the catalog to petitioner's customers is purely incidental to the primary purpose of developing and producing a publishable catalog.

Petitioner's contention, that the art directors do not provide services on property provided to them by petitioner and, accordingly, their services are not taxable to petitioner pursuant to Tax Law § 1105 (c) (2), should be rejected. That section makes taxable the services of, inter alia, producing, fabricating or processing tangible personal property which is directly or indirectly furnished by the person for whom the services are performed. In this case, petitioner engages the photographers and artists selected by the art directors. These persons provide the art directors and retouchers with the photographs, artwork and typography upon which their services are performed. Consequently, this evidence supports a determination that petitioner indirectly supplied the personal property upon

which services were performed. The imposition of the tax herein, pursuant to Tax Law § 1105 (c) (2), was therefore rational and we should confirm respondent's determination.

Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Kane, Casey and Weiss, JJ., concur.